# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO
_____

ANNETTE RODRIGUEZ,

      Plaintiff,

vs.                                            No.  1:17-cv-01147-WJ-LF

RICKY SERNA, BRANDI CORDOVA,
PATRICIA TRUJILLO, NANCY "RUSTY" BARCELO,
RICK BAILEY, MATTHEW MARTINEZ,
ANTHONY SENA, PEDRO MARTINEZ,
MARIO CAETANO, RYAN CORDOVA,
ANDY ROMERO, JOHN WATERS,
BERNIE PADILLA,
NORTHERN NEW MEXICO COLLEGE,
THE NNMC BOARD OF REGENTS,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

THIS MATTER comes before the Court upon ten motions to dismiss filed by Defendants on October 19, 2018 (**Docs. 81-82**) and April 18, 2019 (**Docs. 125-132**).  Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motions are well-taken in part and, therefore, are **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND[1]

Plaintiff was an adjunct faculty member at Northern New Mexico College.  She alleges that she was retaliated against after she began questioning alleged financial improprieties and

---

[1] This matter is before the Court on the third round of motions to dismiss.  The Court notified the parties that they should put any arguments they wish to consider in the current briefing.  The Court will not consider arguments that were not included in these motions, docs. 81-82, and 125-132.

misuse of federal grant money, violating her First Amendment and Due Process rights. She also alleges that Defendants violated New Mexico's Inspection of Public Records act, and improperly claimed copyrights to take down her website that exposed NNMC's improprieties, in violation of the Digital Millennium Copyright Act. The claims and relevant Defendants are as follows:[2]

> Count I: Inspection of Public Records Act ("IPRA") Violations against NNMC, Brandi Cordova, Ricky Serna, Trujillo, Martinez, Sena.

> Count II: Deprivation of First Amendment Speech Rights, against NNMC, the NNMC Board of Regents, Patricia Trujillo, Matthew Martinez, Nancy "Rusty" Barcelo, Ricky Serna, Bernie Padilla, Pedro Martinez, Brandi Cordova, Ryan Cordova, and Rick Bailey.

> Count III: Deprivation of First Amendment Rights of Free Association, against NNMC, Brandi Cordova, Rusty Barcelo, Ricky Serna, and Ricky Bailey.

> Count IV: Deprivation of Due Process Rights, against NNMC, Ricky Serna, and Rick Bailey.

> Count V: Violation of the Digital Millennium Copyright Act ("DMCA") against Ricky Serna.

> Count VI: Common Law Libel, Slander, and Defamation against Patricia Trujillo, Matthew Martinez, Ricky Serna, and Rusty Barcelo.

> Count VII: Assault and Battery against Brandi Cordova, Ryan Cordova, Mario Caetano, John Waters, and Andy Romero.

The fifteen defendants include Northern New Mexico College, the NNMC Board of Regents, and employees or officers thereof.

This case was removed from the Second Judicial District, Bernalillo County, New Mexico, on November 17, 2017. **Doc. 1.** All Defendants filed motions to dismiss asserting qualified immunity and statute of limitations issues, and asserting that Plaintiff failed to state a claim as a

---

[2] It was initially not clear which claims were filed against which Defendant, because there were at the time ten claims asserted against fifteen defendants. The Court directed Plaintiff to file an amended complaint and directed that "[e]ach claim asserted by Plaintiff shall identify which Defendants she asserts that claim against." **Doc. 72, at p. 5.** Therefore, the Court assumes that Plaintiff has followed the Court's order and identified which count applies to which defendant(s).

matter of law pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff agreed to voluntarily dismiss without prejudice her claims against Defendant Anthony Sena and Bernie Padilla.  Therefore, the Court will not address those motions.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a case for failure to state a claim upon which relief can be granted. Rule 8(a)(2), in turn, requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *See id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

**DISCUSSION**

**I.**     **Statute of Limitations issues for § 1983 claims.**

Plaintiff asserted First Amendment retaliation claims against various Defendants.  These Defendants moved to dismiss on the basis of the statute of limitations.

**A.**     **Law on Statute of Limitations**.

In New Mexico, the limitations period for § 1983 actions is three years. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014).  "[I]f the allegations, taken as true, show the requested relief is barred by the statute of limitations, dismissal for failure to state a claim is proper. The statute of limitations defense, however, must be patently clear from the face of the complaint or rooted in adequately developed facts." *Graham v. Taylor*, 640 F. App'x 766, 768–69

(10th Cir. 2016) (internal citations and quotation marks omitted). Where the statute of limitations violation is clear on the face of the complaint, Plaintiff bears the burden of establishing a factual basis for tolling or estoppel. *Chrisco v. Holubek*, 711 F. App'x 885, 888 (10th Cir. 2017); *see also Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980) ("While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute.") (citations omitted).

**B.**     **Equitable Tolling and Estoppel.**

Plaintiff argues that the statute of limitations should be tolled or estoppel should apply. Generally, state law governs limitations and tolling issues for § 1983 claims and federal law determines accrual. *Fratus v. Deland,* 49 F.3d 673, 675 (10th Cir.1995).

Equitable tolling of the statute of limitations must be determined on a case by case basis. *Gardner v. Prison Health Servs., Inc.*, 985 F.Supp. 1257, 1258 (D. Kan. 1997). "Generally, equitable tolling requires a litigant to establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir.2008) (quotations omitted). Conduct by a defendant may qualify as an extraordinary event. *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir.2007) (applying New Mexico law) (equitable tolling "typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control"). Equitable tolling may be appropriate where "the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights. *Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995). Such "extraordinary event[s] include conduct by a defendant that caused the plaintiff to refrain from filing an action during the

applicable period." *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) (applying New Mexico law).

The doctrine of equitable estoppel applies where a party has "(1) made a statement or action that amounted to a false representation or concealment of material facts, or intended to convey facts that are inconsistent with those a party subsequently attempts to assert, with (2) the intent to deceive the other party, and (3) knowledge of the real facts other than conveyed" and the other party does "(1) not know the real facts, and (2) change[s] his or her position in reliance on the estopped party's representations." *Blea*, 2005-NMSC-029, ¶ 20, 138 N.M. 348, 120 P.3d 430 (citing *Lopez v. State*, 1996-NMSC-071, ¶ 18, 122 N.M. 611, 930 P.2d 146).

### C.    <u>Matthew Martinez and Patricia Trujillo (Doc. 129)</u>.

Plaintiff did not plead that Defendants Matthew Martinez or Patricia Trujillo took any action against her within the three-year statute of limitations.  Therefore, as Plaintiff admits, she has the burden of asserting some factual basis for tolling or estopping the statute of limitations, because the statute of limitations violation appears on the face of the complaint.

Plaintiff alleges that Defendant Trujillo retaliated against her by sending an email accusing her of being "unprofessional, inappropriate and targeting members of the *Historias* committee."[3] **Doc. 73, ¶ 26(b).**  She alleges that Defendant Trujillo was potentially involved in her contract not being renewed in April or May 2014.  ***Id.* ¶ 27.**   Plaintiff does not allege that Defendant Trujillo was involved in any other retaliatory action.

Initially, the Court notes that equitable estoppel does not appear to apply, because she does not allege that Defendants' actions caused her to refrain from filing an action until after the limitations period has expired.  She does not point to any actions by Defendant Trujillo or Matthew

---

[3] The *Historias* committee planned an annual history conference at NNMC entitled "*Historias.*"  Plaintiff alleged financial mismanagement of funds used to plan and put on the conference.  **Doc. 73, ¶¶ 16, 17.**

Martinez that justify tolling the statute of limitations or applying estoppel. Rather, she states she met with Dr. Bailey in January 2017, and he said he would do a top down review. But she does not allege or argue that Defendant Bailey made her any promises or made any statements that would cause her to forbear filing a suit. *In re Drummond*, 1997–NMCA–094, ¶ 13, 123 N.M. 727, 945 P.2d 457. This is the same for her equitable tolling argument. *Roberts v. Barreras*, 484 F.3d 1236, 1242 (10th Cir. 2007) (New Mexico equitable tolling only applies when the defendant is prevented from filing throughout the entire length of the statutory period), *citing Tomlinson v. George,* 138 N.M. 34, 116 P.3d 105, 111 (2005) ("[I]f a plaintiff discovers the injury within the time limit, fraudulent concealment does not apply because the defendant's actions have not prevented the plaintiff from filing the claim within the time period and the equitable remedy is not necessary."). Therefore, it appears that Plaintiff still had time to file an action within the statute of limitations. This is the same for her incapacitation argument, in which she appears to admit she was not incapacitated when the statute of limitations period ran.

Alternatively, the Court finds there are no extraordinary circumstances that would toll or estop the statute of limitations as to Defendant Trujillo and Matthew Martinez. Plaintiff now argues that the Court should assume that the Defendants acted in concert or in a conspiracy to hide the claims. But she did not plead this allegation in her First Amendment Complaint. Rather, as to Defendant Trujillo, she knew about her retaliatory actions as early as February 2014, or as late as April or May 2014. Even assuming they acted in concert with Dr. Bailey, his statement to do a top down review does not qualify as an extraordinary circumstance to toll the statute of limitations.

Therefore, the First Amendment claims (Counts II and III) are **DISMISSED** as to Defendants Patricia Trujillo and Matthew Martinez.

### D. <u>Defendant Ricky Serna and Defendant Nancy Barcelo.</u>

Plaintiff alleges that she does not seek to hold Defendant Serna or Defendant Barcelo liable for any First Amendment Retaliatory conduct (Count II) that occurred prior to November 2014. Defendant Barcelo did not address this argument, while Defendant Serna in his reply appears to have dropped his statute of limitations argument as to conduct occurring after November 2014. Therefore, the Court cannot conclude that any statute of limitations violation is clear on the face of the complaint, or that there are no set of facts which could assert a viable claim.

As to the due process claim, neither Defendant Serna nor Plaintiff appears to have addressed when her due process claim accrues. Defendant appears to argue that Plaintiff's due process claim accrued as late as May or June 2014, when her contract was not honored and she filed her grievances. However, her due process claim is predicated in part on the college's inaction on her grievances. It is unclear when she should have realized her due process claim accrued, i.e., when she should have realized Defendant Serna would ignore her grievances. Therefore, it is unclear on the face of the complaint when her due process claim accrued, and dismissal is not appropriate.

## II.     Procedural Due Process Claim (Count IV).

Plaintiff argues that her procedural due process rights were violated when Defendant Bailey and Defendant Serna failed to honor her employment contract or act on her grievances.

To establish a procedural due process claim, Plaintiff must plausibly allege "(1) a constitutionally cognizable liberty or property interest, (2) a deprivation of this interest, and (3) a lack of constitutionally adequate notice and a hearing." *Martin Marietta Materials, Inc. v. Kansas Dept. of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016).

In January 2017, Plaintiff met with Defendant Bailey and she alleges he stated he would do a top down review of her grievances, which were submitted to the college in May 2014 but

unaddressed. She received no follow up from Defendant Bailey. Defendant Bailey's sole ground for dismissal is that the grievances from 2014 are too old, and Plaintiff cannot raise them again with Dr. Bailey. The Court notes these grievances are based on a failure to honor an alleged executed employment contract. Defendant did not cite to any law to support this claim, therefore the Court declines to dismiss Plaintiff's procedural due process claim against Defendant Bailey.[4]

Similarly, Defendant Serna wrote one paragraph on the due process issue, without citing to any case law. Plaintiff alleged that she had a property interest in her employment contract, which was signed and executed, but Defendant Serna refused to honor it. She also filed eight grievances, which she asserts were unaddressed. The Court finds Defendant Serna's motion insufficient to shift the qualified immunity burden to Plaintiff, or for the Court to address a complex procedural due process issue.

**III.     Qualified Immunity as to First Amendment Claims (Counts II and III).**

Various Defendants moved to dismiss the First Amendment retaliation claim (Count II) for failure to state a claim and qualified immunity. Although nominally seeking to also dismiss the First Amendment Free Association claim (Count III), some Defendants did not address it or analyze it, and the Court will not do so *sua sponte*.

**A.     First Amendment Retaliation law.**

Plaintiff alleges that Defendant violated her free speech rights under the First Amendment. The free speech rights protected by the First Amendment include the right to petition the government for redress of grievances. *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998). Governmental retaliation for exercising one's freedom of speech constitutes infringement of that freedom. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

---

[4] Defendant did not use the words "statute of limitations", so neither the Court, nor Plaintiff, construed Defendant as asserting a statute of limitations argument.

To state a First Amendment retaliation claim as non-employee, a plaintiff must allege "(1) [she] was engaged in constitutionally protected activity, (2) the government's actions caused [her] injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to [her] constitutionally protected conduct." *Mocek v. City of Albuquerque*, 813 F.3d 912, 930 (10th Cir. 2015), *quoting Nielander v. Bd. of Cty. Comm'rs,* 582 F.3d 1155, 1165 (10th Cir. 2009).

To state a First Amendment retaliation claim as a person seeking public employment, Plaintiff must satisfy a more demanding test:

> (1) whether the speech was made pursuant to an employee's official duties;
> (2) whether the speech was on a matter of public concern;
> (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;
> (4) whether the protected speech was a motivating factor in the adverse employment action; and
> (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018).

## B.    Qualified Immunity Law.

Some Defendants also moved for qualified immunity.  Under the second prong of qualified immunity, "[t]he law is clearly established if there is a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, that has found the law to be as the plaintiff maintains." *Gadd v. Campbell*, 2017 WL 4857429, at *4 (10th Cir. 2017).   "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, ––– U.S. ––––, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks omitted). "Clearly established law should not be defined at a high level of generality." *White v. Pauly*, ––– U.S. ––––, 137 S.Ct. 548, 552, 196 L.Ed.2d 463

(2017) (internal quotation marks omitted). Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.*

### C. **Defendant Rick Bailey**.

Plaintiff alleges that Dr. Bailey violated her First Amendment Speech and Free Association rights (Counts II and III) by ratifying, or failing to lift, certain retaliatory actions by other administrators. Plaintiff seeks to hold Dr. Bailey liable under "supervisor liability."

Dr. Bailey became president of the College in October 2016. **Doc. 73, 10(c).** Plaintiff met with Dr. Bailey on December 29, 2016 and alleges that Dr. Bailey promised to do a "top-down review" but failed to act. **Doc. 73, p. 16-17.** She alleges she engaged in the following post-employment protected activities: published protected speech on her website in 2015; writing a critical letter to board of regents in March 2016; and writing a critical letter to Dr. Bailey himself six months later in December 2016. She also continued to file IPRA requests through December 2016, after Dr. Bailey took office.

Plaintiff alleges that Dr. Bailey violated her free speech and association rights by failing to (1) lift her ban from campus, (2) lift the ban on her re-employment, and (3) stop the alleged interference with her IPRA inspections. Although Dr. Bailey became president of NNMC after the alleged retaliatory acts, Plaintiff alleges that Dr. Bailey ratified these retaliatory actions after the fact by failing to take action to correct them. Neither party cited to the *Garcetti/Pickering* standard.

To establish individual or supervisory liability against Dr. Bailey, Plaintiff must show Dr. Bailey's "direct personal responsibility" for the claimed First Amendment violation. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760 768 (10th Cir. 2013). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. It is not enough that Defendant Bailey acted in a passive supervisory role when the Plaintiff's constitutional rights were violated, *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010), or that Defendant Bailey knew of the alleged violation and did nothing. *See Iqbal,* 556 U.S. at 677, 129 S.Ct. 1937 (Plaintiff must show more than "a supervisor's mere knowledge of his subordinate's" conduct), *cited in Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

Rather, she must show an "affirmative link" between Dr. Bailey and the constitutional violation, through the following elements: (1) personal involvement, (2) sufficient causal connection, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *see also Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (To impose supervisor liability under § 1983, a plaintiff must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.").

Initially, Plaintiff has not cited to any law that a public records request is a protected activity. The Court concludes that requesting public records is not a protected activity under the First Amendment, and denials of her public record requests are not retaliatory actions under the First Amendment. *Allen v. Lang*, 738 F. App'x 934, 938 (10th Cir. 2018), *citing Shero v. City of Grove*, 510 F.3d 1196 (10th Cir. 2007); *see also Smith v. Plati*, 258 F.3d 1167, 1178 (10th Cir. 2001) ("t is well-settled that there is no general First Amendment right of access to all sources of information within governmental control."). Therefore, at issue is whether Dr. Bailey was responsible for the bans on her employment and entering campus.

The Court concludes that Plaintiff failed to state a claim against Dr. Bailey for supervisory liability for either the First Amendment speech or association claims. Plaintiff failed to plausibly allege that Dr. Bailey had a personal involvement in the constitutional violations. An initial problem with her claim is that the alleged retaliatory actions began before Dr. Bailey became president of NNMC. Her contract was not renewed in 2014. She was issued a trespass notice in May 2016. Sometime in early 2016, Defendant Pedro Martinez said that she was banned from teaching at the College. Therefore, Dr. Bailey was not personally involved in, nor even knew or acquiesced in the alleged unconstitutional conduct when it occurred.

Moreover, there are no facts alleging he knew about the protected activities, or how he allegedly ratified the conduct of his employees. At most, Plaintiff has alleged that Defendant Bailey played a passive role by failing to act, which is insufficient for supervisory liability post-*Iqbal*. *Pemberton v. Patton*, 673 F. App'x 860, 868 (10th Cir. 2016). Therefore, there are no plausible allegations that Dr. Bailey "ratified" the alleged retaliatory acts *on the basis of* her protected speech. Accordingly, Plaintiff does not plausibly allege that Defendant Bailey had the requisite state of mind or causal connection to commit the underlying First Amendment violations.

Defendant also did not plausibly allege a causal connection between Defendant Bailey's actions and the continuation of the bans. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) ("A plaintiff [must] establish the requisite causal connection' by showing 'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.").

Finally, Plaintiff does not allege that she was taken off campus, issued a trespass warning, or applied for a job and was denied a position while Dr. Bailey was president.

Therefore, Plaintiff's First Amendment claims (Counts II and III) against Defendant Rick Bailey are **DISMISSED.**

**D.**     **Dr. Nancy Barcelo.**

Plaintiff alleged that Dr. Barcelo ratified her ban from campus and other retaliatory actions, which Plaintiff assumes to have happened, merely because Dr. Barcelo was the president of NNMC.

As explained above, Defendant Barcelo may not be held liable on a *respondeat superior* theory. Rather, Plaintiff must allege how Dr. Barcelo's actions or personal involvement satisfy the First Amendment retaliation elements. Here, there are no facts to indicate that Defendant Barcelo was personally involved in any decision, rather, just a mere suspicion that, because she was the president of the college, she must have been involved. As explained above, there are not sufficient allegations of personal involvement or causation for supervisory liability post-*Iqbal* under § 1983.

Plaintiff cites to *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979), for the proposition that a cause of action may sound where "defendant was in a position of responsibility, knew or should have known of the misconduct, and yet failed to act to prevent future harm." *Id.* at 697. However, the Court has serious doubts of the validity of that case, given the Tenth Circuit's more recent case law quoted above post-*Iqbal*.

Therefore, the First Amendment speech and freedom of association claims (Counts II and III) against Defendant Barcelo are **DISMISSED.**

**E.**     **Defendant Pedro Martinez**.

Defendant Pedro Martinez was the Provost of the college. Plaintiff alleges that Defendant Martinez violated her First Amendment Rights by (1) harassing or threatening her, (2) banning her from campus and (3) banning her from reemployment.

Defendant does not challenge that Plaintiff engaged in protected speech. *See, e.g., Van Deelen v. Johnson*, 497 F.3d 1151, 1156 (10th Cir. 2007) ("[A] private citizen exercises a constitutionally protected First Amendment right *anytime* he or she petitions the government for redress."). Rather, Defendant Pedro Martinez asserts that his actions would not chill a person of ordinary firmness.

The Court disagrees. Plaintiff alleges she was invited to academic conferences and events on campus by her former department but was prohibited from attending by Defendant Pedro Martinez's campus ban. Importantly, Plaintiff alleges this ban was part of an alleged concerted effort to tarnish her academic career. Assuming that is true, the Court concludes that this would chill a person of ordinary firmness.

Moreover, Plaintiff alleges that Defendant Pedro Martinez (1) harassed her by entering the room she occupied and her personal space six times while she was examining public records and (2) encouraged other employees and administrators to physically batter her. The alleged threats are sufficient to chill a person of ordinary firmness. *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007) (threats of physical violence are sufficient to chill an ordinary person's continued exercise of First Amendment rights).

The Court notes that Plaintiff's allegations, if true, show extraordinary persistence, and her continued public criticism of the college should not be dispositive of the inquiry. Rather, the inquiry is objective. The Court has no doubt that a person of ordinary firmness, faced with these alleged threats to their career, would cease their First Amendment activities. The Court concludes that Plaintiff has plausibly alleged that a person of *ordinary firmness* would be chilled by Defendant Pedro Martinez's alleged actions. *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001)

(inquiry is "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.") (citations and quotation marks omitted).

Defendant Pedro Martinez argues that Plaintiff failed to cite to clearly established law. Because Defendant limited his inquiry to whether Plaintiff's speech was chilled, the Court will do so as well. Plaintiff did not cite to cases on point, as the Court cited above. Moreover, Plaintiff need not cite to a case exactly on point on this issue. Rather, the Court concludes that, a reasonable administrator would know that assaulting or physically threatening Plaintiff and banning her from campus, in retaliation for her protected speech would chill a person of ordinary firmness and constitute First Amendment retaliation. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019), *citing Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) ("Although it is not necessary for the facts in the cited authority to correspond exactly to the situation the plaintiff complains of, the plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.") (internal citation and quotation marks omitted).

As to the ban on her employment, both parties agree that the correct test is the *Garcetti/Pickering* test. Defendant's sole argument is that Plaintiff failed to plausibly allege that the protected speech caused or was a motivating factor in the adverse employment action. She alleges that any employment ban was not a motivating factor, as such ban was instituted six months after her website was no longer active. But reading the complaint as a whole, Plaintiff alleges in great factual detail that she engaged in continued and sustained efforts to expose alleged financial mismanagement at the college, and in response the college and administrators took many retaliatory actions against her. **Doc. 73, ¶ 30-65**. Plaintiff has plausibly alleged that her speech on mismanagement at the college was a motivating factor in the adverse employment action. *See,*

*e.g., Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1208 (10th Cir. 2007) (negative performance evaluations and blacklisting from employment). Therefore, Defendant Pedro Martinez' Motion to Dismiss (**Doc. 82**) is denied.

### F. <u>Defendant Ricky Serna</u>.

Plaintiff alleges that Defendant Serna interfered with her right to operate her website by sending a Digital Millennium Copyright Act ("DMCA") takedown notice to her website service provider, Weebly. In that takedown notice, Defendant Serna attested that Plaintiff used copyrighted photographs on her website without permission. Weebly allegedly took down Plaintiff's website, but restored service once it investigated the copyright claim and determined it was false. Plaintiff also alleges that Defendant Serna published false accusations in a public forum, encouraged subordinates to harass and physically intimidate her when she went to view campus records, and caused a criminal trespass notice to be issued barring her from campus.

Here, it appears that Defendant Serna seeks qualified immunity on his First Amendment retaliation claim on narrow grounds. He appears to primarily argue that a person of ordinary firmness would not be chilled by his actions. Defendant does not appear to address the free association claim (Count III), and the Court will not address it *sua sponte*.

Plaintiff plausibly alleged that a person of ordinary firmness would be chilled. Plaintiff alleges that Defendant Serna encouraged his subordinates to harass and physically intimidate Plaintiff, and that Serna caused his executive assistant to have a criminal trespassing notice filed against her. Plaintiff also alleges that the ban interfered with her career, as she was invited to conferences on campus by her colleagues, which she could not attend because of the campus ban. Plaintiff alleges this was part of a concerted effort to tarnish her reputation among her academic

colleagues.  The Court concludes that these actions, if true, would chill a person of ordinary firmness.

Moreover, as explained above, Plaintiff cited to clearly established law that a person of ordinary firmness would be chilled by such threats.  *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007) (threats of physical violence are sufficient to chill an ordinary person's continued exercise of First Amendment Rights).  Viewing the complaint as a whole, Plaintiff also alleges Defendant Serna participated in a coordinated effort to damage her career. For his part, he is alleged to have banned her from campus, which prevented her from attending academic conferences at the invitation of her former department.  Under these circumstances, this ban may be a violation of clearly established law.  *See, e.g., Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1208 (10th Cir. 2007) (negative performance evaluations and blacklisting from employment).

Viewing these actions together, Plaintiff plausibly alleges that Defendant Serna took retaliatory actions to stop her from engaging in alleged protected speech, which would chill a person of ordinary firmness.  Therefore, the Court cannot say there are no set of facts under which she could assert a First Amendment retaliation claim against Defendant Serna.

G.      **Brandi Cordova.**

Defendant Brandi Cordova also argues that Plaintiff failed to plausibly allege that her actions chilled Plaintiff's speech.  As explained above, Plaintiff plausibly alleged that Ms. Cordova's alleged threats, harassment, assault, battery, and campus ban would chill *a person of ordinary firmness* from continuing to speak about Ms. Cordova's alleged financial misconduct, including alleged receipt of unbid contracts from the college worth in excess of $300k.

IV.    **State Law Claims under New Mexico Tort Claims Act.**

Various Defendants move to dismiss the defamation (Count VI) and assault and battery (Count VII) claims against them as (1) untimely and (2) barred by the New Mexico Tort Claims Act. Plaintiff argues that the claims are timely and do not implicate the New Mexico Tort Claims Act, because the alleged acts were outside the scope of Defendants' duties.

## A.    Tort Claims Act.

The Tort Claims Act preserves sovereign immunity against tort claims for state governmental entities and public employees acting in the scope of their duties, except as specifically waived. *Fernandez v. Mora-San Miguel Elec. Co-op., Inc.*, 462 F.3d 1244, 1250 (10th Cir. 2006); *College Savings Bank v. Fl. Prepaid Postsecondary Education Expense Bd.*, U.S. 527, 666, 675 (1999) (a state's sovereign immunity precludes suits against a state or its employees except as specified where immunity has been waived).

The New Mexico Tort Claims Act does not expressly waive defamation claims against these Defendants. *See* NMSA 1978, § 41–4–4(A) (noting waivers of immunity in §§ 41–4–5 through–12); *Garcia–Montoya v. State Treasurer's Office,* 130 N.M. 25, 43, 16 P.3d 1084, 1102 (2001) (affirming the summary judgment on defamation claims against the State Treasurer and the Deputy State Treasurer "on the basis that [the plaintiff's] claims were barred by the Tort Claims Act"); *Vigil v. State Auditor's Office,* 138 N.M. 63, 66, 116 P.3d 854, 857 (Ct.App.2005).

However, Plaintiff argues that some of the defamatory statements were not within the scope of duties and should not be barred by the Tort Claims Act. The New Mexico legislature has defined "scope of duties" to "mean [ ] performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." *Garcia-Montoya v. State Treasurer's Office*, 2001-NMSC-003, ¶ 50, 130 N.M. 25, 43, 16 P.3d 1084, 1102, *citing* NMSA 1978, § 41–4–3(G) (1995). "Whether an employee is acting

within the scope of duties is a question of fact[.]" *Celaya*, 2004–NMSC–005, ¶ 28, 135 N.M. 115, 85 P.3d 239. "The TCA clearly contemplates including employees who abuse their officially authorized duties, even to the extent of some tortious and criminal activity." *Celaya v. Hall*, 2004-NMSC-005, ¶ 25, 135 N.M. 115, 121, 85 P.3d 239, 245.

The tortious acts themselves need not be "authorized" by NNMC to fall within the scope of duties. *See, e.g., Risk Mgmt. Div., Dep't of Fin. & Admin., State v. McBrayer*, 2000-NMCA-104, ¶ 20, 129 N.M. 778, 784, 14 P.3d 43, 49 ("RMD overlooks how this sexual assault came about-through Araiza's *duty* as a university instructor to distribute homework assignments. Because it appears that Araiza used this authorized duty as a subterfuge to accomplish his assault, we find that a reasonable fact finder could determine that his actions were within the scope of the duties that NMSU requested, required or authorized him to perform."). Therefore, the Court will analyze below whether Defendants' alleged tortious acts occurred in the scope of their duties.

**B.      Defamation claims (Count VI) against Patricia Trujillo, Matthew Martinez, Ricky Serna, and Rusty Barcelo.**

Plaintiff alleges that Defendants Patricia Trujillo, Matthew Martinez, Ricky Serna, and Rusty Barcelo "made various public written and oral communications asserting that Plaintiff's conduct was "unprofessional", "inappropriate," "aimed at hurting the college" and "defaming" the College, and that her termination of employment was justified by Plaintiff's own misconduct." **Doc. 73, ¶ 133**. It appears that Plaintiff alleges that these statements were made after she was fired and continued through 2018.

The Court cannot conclude, from the face of the complaint, that the statute of limitations bars claims based on these statements or that these statements were made within the scope of duties. For example, it is unclear whether Defendant Serna's statements, on an internet comment

section of a Santa Fe New Mexican internet article, that Plaintiff was inciting violence, was done in the scope of his duties. Plaintiff plausibly pled that the statements occurred outside the scope of duties. Moreover, it is unclear from the face of the complaint when these defamatory statements were made. Therefore, the Court cannot conclude there are no sets of facts in which a defamation claim may sound and declines to dismiss the defamation claim.

**C.** **Assault and Battery claims against Defendants John Waters, Ryan Cordova, Brandi Cordova, Mario Caetano, and Andy Romero.**

Plaintiff alleges that Defendants John Waters, Ryan Cordova, Brandi Cordova, Mario Caetano, and Andy Romero assaulted her, battered her, and forced her to run a gauntlet to leave a room on the NNMC campus. Defendants seek to dismiss the assault claim against them, because (1) there is no express waiver under the New Mexico Tort Claims Act, and (2) the two-year statute of limitations under the TCA bars these claims.

Initially, the parties dispute whether the Tort Claims Act 2 year or the 3-year tort statute of limitations applies. Defendants allegedly assaulted Plaintiff in June 2015. Plaintiff argues the 3-year tort statute of limitations applies, because the Defendants acted outside the scope of their duties. Defendants did not reply to this argument. Therefore, it appears that resolution of the statute of limitations issue hinges on whether the Defendants were acting within the scope of their duties.

Here, Plaintiff alleges that she was inspecting records on the NNMC campus pursuant to a public records request. She alleges that at the request of Brandi Cordova, the records custodian, or her husband, Ryan Cordova, the four Defendants appeared outside the room in which she was inspecting records. She alleges the four Defendants blocked her exit and caused Plaintiff fear of battery. She alleges when she left the room, they intentionally jostled and touched her.

20

Plaintiff also argues Defendants acted for the personal benefit of Ryan and Brandi Cordova, who Plaintiff had targeted with the allegations of receiving inappropriate, unbid financial contracts for their company. Ryan Cordova, Caetano, and Romero, were coaches or custodians, and it appears they had no security duties. They appeared to have no reason to be there. It is a reasonable inference from Plaintiff's complaint that their scope of their duties did not encompass acting as security officers. **Doc. 73, ¶ 10, 50, 145.** Therefore, Plaintiff has plausibly alleged that Defendants Ryan Cordova, Caetano, and Romero acted outside the scope of their duties.

However, Defendant Waters was the head of security. It is hard to imagine that these actions were not within the scope of his duties and Plaintiff does not contest otherwise. Rather, she argues that he is a law enforcement officer, for which there is an express waiver for assault under the TCA. Therefore, it appears the two-year statute of limitations under the TCA applies to Defendant Waters, and Plaintiff does not give any reason why it does not. Therefore, the assault and battery claim **(Count VII)** is **DISMISSED** as to Defendant Waters.

Moreover, Defendant Brandi Cordova's alleged conduct occurred in her capacity as the public records custodian, while she was supervising Plaintiff's inspection of public records. It appears that Defendant Brandi Cordova's actions occurred within the scope of her duties. Therefore, the assault and battery claim (Count VII) is **DISMISSED** as to Defendant Brandi Cordova.

## V.    Digital Millennium Copyright Act ("DMCA") (Count V).

Defendant Ricky Serna seeks to dismiss the DMCA claim, asserting that Plaintiff failed to state a claim or plead with particularity. The Court disagrees. Plaintiff alleged that Defendant Ricky Serna sent a takedown notice to her web provider that photos on her website were copyrighted, when he knew they were not.

Under the DMCA, "[a]ny person who knowingly materially misrepresents under this section-- (1) that material or activity is infringing . . .shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material." 17 U.S.C. § 512(f). Moreover, the DMCA requires that a "notification of copyright infringement" include a statement that the complaining party has a "good faith belief that use of the material in the manner complained of is not authorized by the copyright owner." 17 U.S.C. § 512(c)(3)(A)(v). "The purpose of Section 512(f) is to prevent the abuse of takedown notices." *Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1156 (N.D. Cal. 2008).

Here, Plaintiff has plausibly pled that the takedown notice was issued in bad faith and a knowingly material misrepresentation, as Defendant plausibly issued it in retaliation for Plaintiff's prior speech. Plaintiff alleges she published on her website content critical of NNMC and certain administrators. **Doc. 73, ¶ 36.** Plaintiff alleges that Defendant Serna submitted a takedown notice and attested that the photos were copyrighted, when they were not. Plaintiff's service provider, Weebly, Inc., determined that Defendant Serna's claims were false and restored the website. Defendant Serna stated that her website "tweeted hatred." He stated that "this small group of angry and viscous [sic] people are capable of violence." **Doc. 73, ¶ 44.** Based on this prior alleged conflict, Plaintiff plausibly alleged that Defendant Serna knew that the photos were not copyrighted, and knowingly misrepresented the photos were copyrighted to be vindictive or retaliate against Plaintiff for her statements.

## VI.    <u>Remaining Claims Against Board of Regents of Northern New Mexico College</u>.

Plaintiff has apparently agreed to drop Counts II, III, IV, and VI against the Board of Regents of Northern New Mexico College ("NNMC")[5], therefore the Court declines to address those claims.

However, Plaintiff asserts that NNMC may be liable for assault and battery (Count VII) through the conduct of Defendant's employee, John Waters. She also alleges that NNMC is liable under the New Mexico Inspection of Public Records Act (Count I).

### A.        Inspection of Public Records Act (Count I).

The Inspection of Public Records Act requires that "[a] custodian receiving a written request shall permit the inspection immediately or as soon as is practicable under the circumstances, but not later than fifteen days after receiving a written request. If the inspection is not permitted within three business days, the custodian shall explain in writing when the records will be available for inspection or when the public body will respond to the request." NMSA (1978) § 14-2-8(D). The act and case law interpreting it give a private right of action for failing to respond to a public records request or giving an incomplete records request.

As to the Public Records act claim, Defendant NNMC argues that Plaintiff did not allege detailed enough facts to survive Fed. R. Civ. P. 12(b)(6). However, reviewing Plaintiff's entire complaint, she pled far more than a mere bare conclusory recitation of the elements. In addition to the detailed factual allegations in the complaint, she attached and incorporated a chart detailing Defendant's response to her IPRA requests and Defendant's reason for not providing them. Defendant appears to raise factual issues that are well beyond the scope of a Fed. R. Civ. P. 12(b)(6) review. Reviewing the entire complaint, including the attached chart, the Court concludes that Plaintiff alleged a plausible IPRA claim.

---

[5] Plaintiff named "Northern New Mexico College" and the Board of Regents as separate Defendants. Defendants represent that "Board of Regents of Northern New Mexico College" is the correct Defendant.

B.    **Assault and Battery (Count VII).**

NNMC was not named as a party in Count VII.  Defendant NNMC seeks to dismiss the claim anyway.  However, Plaintiff appears to argue that NNMC is liable for the alleged assault and battery of its employee, Defendant Waters, who Plaintiff admits was acting within the scope of his duties.  As explained above, the Court dismissed the claim against Defendant Waters as barred by the Tort Claim Act's two-year statute of limitations.  The Court does not see any reason why the statute of limitations also does not bar this claim, and Plaintiff did not give any reason why it does not.  Therefore, the assault and battery claim (Count VII) against NNMC is also **DISMISSED**.

**CONCLUSION**

In sum, the Court dismisses the following claims:

- First Amendment Claims (Counts II or III) against Patricia Trujillo, Matthew Martinez, Rick Bailey and Nancy Barcelo.
- Assault and Battery (Count VII) against NNMC, John Waters, and Brandi Cordova.
- Counts II, III, IV, VI, and VII against NNMC.

Plaintiff also voluntarily dismissed claims against Bernie Padilla and Anthony Sena.  All other claims remain.  Because of the voluminous filings, and to ensure fair notice to both parties, the Court only addressed those claims that were specifically briefed.

**IT IS THEREFORE ORDERED** that Defendants' motions to dismiss are hereby **GRANTED IN PART AND DENIED IN PART** for reasons described in this Memorandum Opinion and Order.

_____

CHIEF UNITED STATES DISTRICT JUDGE